

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SCOTT M. SEIDEL, Chapter 7 trustee )
for the bankruptcy estate of Mosaic )
Data Solutions, Inc., )
                                        )
          Plaintiffs, )
                                        )
          vs. )          No. 05 C 6698
                                        )
MARC BYRON, BEN KAAK, )
DOMINIC IERACI, DAVID GRAFF )
and CATHERINE BARBARO, )
                                        )
          Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott M. Seidel, Chapter 7 trustee for the bankruptcy estate of Mosaic Data Solutions, Inc. ("Mosaic"), brought this action against defendants Marc Byron, Ben Kaak, Dominic Ieraci, David Graff, and Catherine Barbaro, Mosaic's former directors and/or officers, alleging breach of fiduciary duty, wasting corporate assets and fraudulently transferring certain assets belonging to Mosaic. Before the court is defendants' motion to dismiss, citing failure to state a claim upon which relief may be granted and failure to plead fraud with particularity. For the following reasons, defendants' motion is granted without prejudice.

## BACKGROUND

On November 24, 2003, an involuntary bankruptcy petition was filed against Mosaic in the Northern District of Texas (plf's cplt. ¶ 4.) Plaintiff was appointed as the Chapter 7 trustee for Mosaic's bankruptcy estate, and the complaint at issue was filed on November 23, 2005. Defendants' motion to dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(6), 8, and 9(b), was first

filed on Sept. 22, 2006. This matter, originally assigned to the calendar of Judge Filip, was reassigned to this court on March 6, 2008. Because the motion to dismiss was pending at that time, the motions were stricken by order of Judge Filip. A new motion to dismiss was filed in this court on June 10, 2008 based largely on the U.S. Supreme Court's recent decision in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1973-74 n. 14 (2007).

Mosaic was a Delaware corporation having its principal place of business in Illinois. Defendants are described as having been directors and/or officers of Mosaic "at all relevant times" (plf's cplt., ¶¶5-9). In essence, the complaint alleges that defendants breached their duties to Mosaic and its creditors in two ways: First, that they were directors and/or officers of other unspecified entities and therefore owed conflicting duties to Mosaic and those other entities (*id.*, ¶ 11). Second, they allegedly ran Mosaic as a "disposable, undercapitalized business to the detriment of [Mosaic] and its creditors and for the benefit of the other entities to which the Defendants owed duties" (*id.*, ¶ 12).

The complaint contains five counts. The first three arise under Delaware law, and the last two under Illinois and federal bankruptcy law.

Count I alleges that defendants breached their trust fund duties when Mosaic was insolvent, or in the vicinity of insolvency (plf's cplt., ¶ 16). Count II alleges that defendants breached their fiduciary duties (*id.*, ¶ 18). Count III alleges waste, negligence and gross negligence on the part of defendants (*id.*, ¶¶ 20-21). Count IV alleges that defendants engaged in the transfer of the interest in Mosaic's property with the actual intent to hinder, delay, or defraud Mosaic's creditors (*id.*, ¶ 23). Count V alleges that defendants participated in the transfer of interests in Mosaic's property to other entities, or the incurring of obligations without a reasonably equivalent value (*id.*, ¶ 25).

This case is properly before this court because Counts IV and V arise under federal law. 28 U.S.C. § 1331. In addition, diversity jurisdiction is proper because each defendant is a citizen of a different state from Seidel, and the complaint seeks damages in excess of $5 million. 28 U.S.C. § 1332; plf's cplt., ¶ 13. A substantial part of the acts, events and omissions alleged in the complaint occurred in the Northern District of Illinois (plf's cplt., ¶ 13).

## DISCUSSION

In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the well-pleaded allegations of the complaint must be accepted as true. Twombly, 127 S.Ct. at 1965. We must construe all inferences in a light most favorable to the plaintiff. Piscidia v. Old Nat. Bancorp, 499 F.3d 629, 633 (7th Cir. 2007).

Under Fed. R. Civ. P. 8(a), plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise the right to relief above a speculative level. Twombly, 127 S.Ct. at 1973-74 n. 14. Although the application of Twombly to various types of cases is still developing, the case did not signal a switch from notice pleading to fact pleading in the federal courts. Airborne Beepers & Video, Inc. v. AT & T Mobility LLC, 499 F.3d 663, 667 (7th Cir. 2007) (citing Erickson v. Pardus, ___ U.S. ___, 127 S.Ct. 2197, 167 LED.2d 1081 (2007)). Rather, Erickson held that the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. 127 S.Ct. at 2200.

One exception to the notice pleading standard is that in all averments of fraud or mistake, a plaintiff must plead with specificity the who, what, where and when of the alleged fraud or mistake. Fed. R. Civ. P. 9(b); Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins., 412 F.3d 745, 749 (7th Cir. 2005).

In cases where a bankruptcy trustee pleads fraud, however, the trustee should be afforded greater liberality. In re Global Link Telecom, 327 BR. 711, 717 (Bank. D. Del. 2005) (citations omitted). Among the reasons for this leniency are that the trustee often must plead fraud on secondhand knowledge, and may find the debtor's records in disarray. *Id.*; *see also* In re American Remanufacturers, 2007 WL 2376723, *5 (Bank. D. Del. 2007). However, bankruptcy trustees must still provide enough information to give the defendants an understanding of the claims against them. *Id.*

Turning to the case at bar, the motion to dismiss is granted for the reason that the trustee's allegations fail to raise the right to relief above a speculative level. The three main problems are that the complaint contains allegations too vague to give defendants notice of the claims against them; does not adequately indicate which allegations support what claims; and provides no support for the amount of relief requested ($5 million). Each count will be examined in turn.

## Count I, Breach of Trust Fund Duties

Count I alleges that defendants breached their trust fund duties by failing to safeguard Mosaic's assets for the benefit of its creditors, once Mosaic was insolvent or within the zone of insolvency (plf's cplt., ¶ 16). Under Delaware law, corporate officers and directors owe creditors no extra contractual duties unless there are special circumstances, including operating in insolvency or in the "zone" of insolvency. Geyer v. Ingersoll Publications Co., 621 A.2d 784, 787 (Del. Ch. 1992). The duties owed to creditors may arise before the filing of the bankruptcy petition because a corporation is insolvent when it is in fact insolvent, not when insolvency arises due to a statutory filing like bankruptcy. *Id.*

A corporation is insolvent when its liabilities far exceed its assets, or when it is unable to pay its debts. Prod. Resources Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 775-776 (Del. Ch. 2004). The Delaware Supreme Court has not yet defined "zone of insolvency" precisely. North American Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92, 98 n. 20 (Del. 2007) ("NACEPF"). In NAECPF, however, the plaintiff's complaint was found to allege that the debtor operated in zone of insolvency where it stated, among other things, that the debtor could not raise sufficient funds to pay its debts; that it was unable to borrow money from any source other than from one investor; and that it had a certain specific amount of cash on hand that was being spent at a specific rate each month. *Id.* at 97-98.

Although defendants here, as directors and/or officers, owed certain fiduciary duties to Mosaic and its creditors, there are two problems with Count I. First, the complaint merely states that Mosaic "entered the zone of insolvency prior to being placed into bankruptcy" (plf's cplt., ¶ 10). Nothing in the complaint indicates when Mosaic's liabilities far exceeded its assets, or when it could no longer pay its debts. The court is asked to take on faith the trustee's statement that Mosaic was insolvent, or within the zone of insolvency "during all relevant times" (plf's cplt., ¶ 16). This vague language makes it impossible to know when defendants' alleged duties to Mosaic's creditors arose, thereby failing to provide notice to defendants of the time frame for which they need to account.

Second, the complaint's allegations fail to give defendants notice of the claims against them, as Twombly requires. The complaint states that defendants owed duties to the creditors "not to divest, dissipate or unduly risk assets necessary to satisfy the claims of the creditors" (plf's cplt., ¶ 16). In support of this claim, plaintiff alleges that defendants failed to hoard cash, enter into agreements "with key people" to keep them employed, "preserve or protect value of

[Mosaic's] assets," and "otherwise preserve or maximize the current value of [Mosaic] and its assets for the creditors." (*id.*, ¶ 12(J)-(K)). Without any information as to how defendants' alleged failings led to the dissipation of Mosaic's assets, it is difficult to understand how defendants breached their duties to Mosaic's creditors. We agree with defendants that they have not received notice of the acts or omissions being impugned (dft's mem., at 5).

Count II, Breach of Fiduciary Duties

Under Delaware law, the directors of a corporation owe both the corporation and its shareholders the fiduciary duties of due care and loyalty. Stone ex rel. AmSouth Bancorp v. Ritter, 911 A.2d 362, 370 (Del. 2006). Although the complaint here fails to specify which fiduciary duty defendants allegedly breached, we will assume plaintiff intended to plead a breach of the duty of loyalty since the corresponding section of his reply brief discusses this duty (plf's reply at 5).

The duty of loyalty requires that directors eschew any conflict between the duty and their own self-interest, and that they act in good faith. Ivanhoe Partners v. Newmont Min. Corp., 535 A.2d 1334, 1345 (Del. 1987); Stone, 911 A.2d at 370. Although the question of breach is fact-specific, the duty of loyalty is typically breached when a corporate fiduciary uses his or her office, or control, to promote, advance or effectuate a transaction between the corporation and the person (or entity in which he has a substantial interest) and that the transaction is not substantively fair to the corporation. Solash v. Telex Corp., 1988 WL 3587 (Del. Ch. Jan. 19, 1988); see also Stone, 911 A.2d at 370 ("[w]here directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith"). The burden of pleading and proving a claim for a breach of the duty of loyalty is onerous.

Teachers' Ret. Sys. Of La. v. Aidinoff, 900 A.2d 654, 668 (Del. Ch. 2006). Some examples of breaches of the duty of loyalty include a director's action taken for the purpose of entrenching himself in office, and another director's deceptive action intended to benefit one class of stockholder to the detriment of another. See e.g. Frantz Mfg. Co. v. EAC Industries, 501 A.2d 401 (Del. 1985); Bossier v. Connell, C.A. No. 8624, 1986 WL 12785, *5-*6 (Del. Ch. Nov. 12, 1986).

While Count II does not specify which "acts, errors, and omissions" constitute a breach of the duty of loyalty, presumably the relevant allegations are those relating to the defendants' alleged conflict of interest (plf's cplt., ¶¶ 11-12). These allegations are conclusory, and therefore insufficient to make out a claim for a breach of the duty of loyalty. The complaint points to no specific transaction in which defendants stood on both sides, nor does it explain how defendants personally benefitted from the allegedly conflicted transactions. We decline plaintiff's invitation to infer that defendants benefitted personally from the conflicted transactions based on the allegations in the complaint (plf's reply at 5). As currently drafted, Count II does not contain sufficient factual allegations to raise the right to relief above a speculative level.

Count III, Waste, Negligence, and Gross Negligence

For directors to be liable under a theory of waste under Delaware law, the plaintiff must prove that the consideration received by the corporation was so inadequate that no person of ordinary sound business judgment would deem it worth that which the corporation paid. In re The Walt Disney Co. Deriv. Litig., 907 A.2d 693, 748-749 (Del. Ch. 2005). Waste is rarely found because it is "a rare, 'unconscionable case[ ] where directors irrationally squander or give away corporate assets.'" Id. at 749, citing Brehm v. Eisner, 746 A.2d 244, 263 (Del. 2000). Regarding Seidel's allegations of negligence and gross negligence, the court notes that Delaware

corporation law "eschews the use of a simple negligence standard." In re Lear Corp. Shareholder Litigation, 2008 WL 4053221, *9 (Del. Ch. Sept. 2, 2008). Rather, for liability to attach, plaintiffs must plead and prove gross negligence to overcome the presumption that directors are protected by the deferential business judgment rule. *Id.* Only where the directors act "without the bounds of reason," or show a "reckless indifference to or a deliberate disregard of the stockholders," can they be found to be grossly negligent. Rabkin v. Philip A. Hunt Chem. Corp., 547 A.2d 963, 970 (Del. Ch. 1986). Directors of an insolvent corporation do not lose the protection of the business judgment rule if their actions, taken in good faith and with due diligence, result in continued or greater insolvency. Trenwick Am. Litig. Trust v. Ernst & Young LLP, 906 A.2d 168, 205 (Del. Ch. 2005).

Here, plaintiff alleges that defendants owed a duty of "reasonable prudence" to Mosaic (plf's cplt., ¶ 20).[1] In support of his allegations, plaintiff states that defendants transferred cash from Mosaic to other entities, with no or inadequate consideration, and that they encumbered Mosaic's assets for the benefit of other entities with no or inadequate consideration. *Id.* at ¶ 12(E)-(F). He further claims that these alleged acts were committed with such recklessness and wanton disregard for the interests of Mosaic and its creditors as to constitute gross negligence. *Id.* at ¶ 21. He seeks exemplary and/or punitive damages for these acts. *Id.*

Again, the complaint comes up short. Nothing in the complaint addresses the circumstances of any allegedly grossly negligent decisions defendants may have made. There is no enumeration of how defendants allegedly encumbered Mosaic's assets for the benefit of other entities. There are no allegations that defendants acted in bad faith or failed to use due diligence in making decisions. For these reasons, the complaint fails to overcome the

---

[1] The court was unable to find a definition of "reasonable prudence" in Delaware case law or its corporation law.

presumption that defendants are protected by the business judgment rule.[2] As the Seventh Circuit has stated, "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Fed. R. Civ. P.] 8." Airborne Beepers, 499 F.3d at 667. That is the situation here.

### Counts IV and V, Fraudulent Transfers

The Illinois Uniform Fraudulent Transfer Act ("IUFTA") "protects against two kinds of fraudulent transfers: transfers with an actual intent to defraud and transfers which the law considers fraudulent (*i.e.*, constructive fraud or fraud in law)."[3] Zimmerman v. Paulsen, 524 F. Supp. 2d 1077, 1080 (N.D. Ill. 2007) (quoting Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997)). Plaintiff seeks to avoid and recover these allegedly fraudulent transfers (or the value thereof) pursuant 11 U.S.C. §§ 544 and 550. Because these allegations involve fraud, they must be pled with particularity in accordance with Fed. R. Civ. P. 9(b). *Id.*

To find liability for the first type of fraudulent transfers under the IUFTA and its analogous provisions in Section 548(a)(1) of the Bankruptcy Code, a creditor needs to demonstrate that the debtor transferred the property with actual intent to hinder, delay, or defraud any of its creditors. 740 ILCS 160/5(a)(1); *see also* In re Securities Investor Protection Corp. v. R.D. Kushnir & Co., 274 BR. 768 (Bank. N.D. Ill. 2002). Subsection 5(b) of the IUFTA

---

[2] Since Count III fails to state a claim, it is unnecessary to decide whether the exculpatory provisions in Mosaic's charter would bar the trustee's gross negligence claim.

[3] The IUFTA states, in relevant part: (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. 740 ILCS 160/5(a).

lists eleven indicators of actual intent.[4] When a sufficient number of these indicators are present, the court may infer fraud. In re Stacy, 223 BR. 132, 136 (N.D. Ill. 1998).

Count IV alleges that "[w]ithin four years prior to the filing of the Bankruptcy Case, the Defendants participated in the transfer of the interests of [Mosaic] in property to other entities or the incurring of obligations with actual intent to hinder, delay, or defraud [Mosaic's] creditors" (plf's cplt., ¶ 23). The complaint goes on to state that "at least one unsecured creditor" could avoid the transaction under state law. Id. These allegations do not satisfy the requirement of Fed. R. Civ. P. 9(b) that the complaint state the who, what and where of the alleged fraud with particularity, nor do they suggest any of the indicators of actual intent are present. The complaint does not indicate who the "other entities" or the "unsecured creditor[s]" are. The "what" is vaguely described as either a transfer of Mosaic's interests or the incurring of obligations. The "where" is missing. Only the "when" requirement is arguably satisfied (within four years of November 2005). Even when plaintiff is afforded more liberality as a bankruptcy trustee, this count fails to state a claim.

In Count V, plaintiff alleges that defendants participated in a constructively fraudulent transfer of Mosaic's property.[5] The IUFTA establishes a presumption that constructive fraud

---

[4] The indicators used to determine whether or not there was actual intent include the following: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. 740 ILCS 160/5(b).

[5] As with Count IV, plaintiff does not cite to the specific provision of the IUFTA. But, based on the complaint's recitation of the statutory language, it appears the claim is being made under subsection 5(a)(2)(A) and (B).

has occurred where 1) the debtor made a voluntary transfer; 2) at the time of the transfer, the debtor had incurred obligations elsewhere; 3) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer; and 4) after the transfer, the debtor failed to retain sufficient property to pay the indebtedness. Zimmerman, 524 F. Supp. 2d at 1080 (citing Gen. Elec. Capital Corp., 128 F.3d at 1079).

Just as the court found in Zimmerman, we find that plaintiff's mere reiteration of the statutory language in Count V cannot fulfill the requirements of Rule 9(b). 524 F. Supp. 2d at 1080. Missing from the complaint are allegations relating to the value, if any, that defendants received in consideration for the transfer; other obligations Mosaic had incurred at the time of the transfer; and Mosaic's failure to retain sufficient property to pay for the indebtedness. The complaint is too sketchy to provide defendants with fair notice of the grounds on which the claim rests.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the complaint in its entirety is granted. The complaint is dismissed without prejudice, and plaintiff is granted leave to file an amended complaint within 30 days.

*James B. Moran*
JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 26, 2008.