UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT M. SEIDEL, Chapter 7 trustee for the bankruptcy estate of Mosaic Data Solutions, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 05 C 6698 |
| MARC BYRON, BEN KAAK, DOMINIC IERACI, DAVID GRAFF and CATHERINE BARBARO, | ) ) ) ) ) | Judge Ruben Castillo |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Scott M. Seidel ("Plaintiff"), Chapter 7 trustee for the bankruptcy estate of Mosaic Data Solutions, Inc. ("Mosaic Data"), brings this action against Marc Byron, Ben Kaak, Dominic Ieraci, David Graff, and Catherine Barbaro ("Defendants"), the former directors and officers of Mosaic Data, for breach of fiduciary duty, waste, and related claims stemming from their alleged mismanagement of the company leading to its insolvency. (R. 1, Compl.) Presently before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint. (R. 84, Defs.' Mot. to Dismiss.) For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND & PROCEDURAL HISTORY

Mosaic Data was a Delaware corporation with its principal place of business in Illinois. (R. 83, First Am. Compl. ¶ 4.) On November 24, 2003, an involuntary bankruptcy petition was filed against Mosaic Data in the Northern District of Texas. (*Id.*) Plaintiff was appointed to serve as Chapter 7 trustee for Mosaic Data's bankruptcy estate. (*Id.*)

1

In November 2005, Plaintiff filed this action alleging that Defendants mismanaged Mosaic Data in violation of their duties under Delaware law, and seeking to avoid an alleged fraudulent transfer of Mosaic Data's assets. (R. 1, Compl.) On September 26, 2008, Judge James B. Moran dismissed Plaintiff's complaint without prejudice, finding that it was "too sketchy to provide defendants with fair notice of the grounds on which the claim[s] rest[]."[1] (R. 82, Mem. Opinion & Order.) Judge Moran gave Plaintiff an opportunity to replead its claims, and Plaintiff thereafter filed its First Amended Complaint. (R. 83, First Am. Compl.) On April 24, 2008, the case was reassigned to this Court upon the passing of our distinguished colleague Judge Moran. (R. 105, Exec. Comm. Order.)

In the First Amended Complaint, Plaintiff again alleges that Defendants, who are described as "director[s] and/or officer[s]" of Mosaic Data, improperly managed the company, leading to its insolvency. (R. 83, First Am. Compl.) Plaintiff alleges that while acting as directors and/or officers of Mosaic Data, Defendants were also serving as "directors and/or officers of other entities," including Mosaic Group, Inc., Mosaic Sales Solutions, Inc., Mosaic Prepaid Solutions, Inc., and Mosaic Group Partnership (the "Mosaic Group Entities"). (*Id.* ¶ 12.) Plaintiff alleges that Defendants owed conflicting fiduciary duties to these entities, and that they "operated Mosaic Data from a conflicted perspective as a disposable, undercapitalized business to the detriment of Mosaic Data and its creditors and to the benefit of the Mosaic Group Entities. . . ." (*Id.* ¶ 13.)

---

[1] The case was originally assigned to Judge Mark Filip, and was reassigned to Judge Moran when Judge Filip resigned from the bench in March 2008. (*See* R. 67, Exec. Comm. Order.)

In particular, Plaintiff challenges Defendants' decision in January 2003 to pledge all of Mosaic Data's assets so that the Mosaic Group Entities, which had filed a voluntary petition under Chapter 11 of the Bankruptcy Code a few months earlier, could obtain debtor-in-possession financing ("the Asset Pledge"). (*Id.* ¶ 15.) Plaintiff alleges that Mosaic Data received no consideration or other benefit in exchange for the Asset Pledge. (*Id.*) Plaintiff further alleges that Defendants, as officers and/or directors of the Mosaic Group Entities, stood to personally benefit from the Asset Pledge "by, among other things, retaining their lucrative compensation from the Mosaic Group Entities." (*Id.*) Plaintiff alleges that the Asset Pledge "predictably resulted in substantial harm to Mosaic Data," a once profitable company, and rendered it unable to obtain financing to operate its day-to-day business or pay its creditors. (*Id.* ¶ 17.) Plaintiff alleges that Defendants' "participation in the Asset Pledge was in blatant breach of their fiduciary duties of care and loyalty to Mosaic Data . . . ." (*Id.* ¶ 18.)

Plaintiff raises seven claims in the First Amended Complaint: In Count I, Plaintiff alleges a claim under Delaware law for breach of trust fund duties owed to Mosaic Data's creditors; in Count II, Plaintiff alleges a claim under Delaware law for breach of fiduciary duties owed to Mosaic Data; in Count III, Plaintiff alleges a claim under Delaware law for waste of corporate assets; in Counts IV and V, Plaintiff seeks to avoid the Asset Pledge as a fraudulent transfer under the Bankruptcy Code, 11 U.S.C. § 548, and the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/1; in Count VI, Plaintiff asserts a claim for "exemplary damages"; and in Count VII, Plaintiff seeks attorneys fees. Defendants move to dismiss, arguing that the First Amended Complaint is still too vague and fails as a matter of law for numerous reasons. (R. 84, Defs.' Mot. to Dismiss.)

## LEGAL STANDARDS

In determining whether to grant a motion to dismiss, the Court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a motion to dismiss, the complaint must overcome "two clear, easy hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

When the plaintiff is alleging fraud, the pleading standard is more stringent. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) of the Federal Rules of Civil Procedure provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading requirement is a response to the "great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino*, 477 F.3d at 507. Thus, "[a] plaintiff claiming fraud or mistake must do more pre-complaint investigation to assure that the claim is responsible and supported, rather than defamatory and extortionate." *Id.* A complaint alleging fraud must provide "the who, what, when, where, and how" of the fraud. *Id.* Some courts have recognized that in cases where a bankruptcy trustee pleads fraud, greater liberality should be afforded, since the trustee often must plead fraud based on secondhand knowledge, or may find the debtor's records in disarray. *See Seidel v. Byron*, No. 05-6698, 2008 WL 4411541, at *2 (N.D. Ill. Sept. 26, 2008)

(citing cases).

## ANALYSIS

As an initial matter, the Court must determine whether documents submitted by Defendants can be considered in deciding the motion to dismiss. Specifically, Defendants have submitted the following documents along with their motion: (1) Mosaic Data's short form prospectus filed with the SEC; (2) public filings in the Mosaic Group Entities' Chapter 11 bankruptcy case; and (3) Mosaic Data's certificate of incorporation. (R. 85, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem."), Exs. A-F.) Plaintiff objects generally to the Court's consideration of any outside documents. (R. 94, Pl.'s Resp. to Defs.' Mot. to Dismiss ("Pl.'s Resp.") at 1-2.) Plaintiff is correct that as a general matter, the Court is precluded from considering documents outside the pleadings in deciding a motion to dismiss, unless the Court converts the motion into one for summary judgment. Fed. R. Civ. P. 12(d). Like most rules, however, there are exceptions. Where a document is referenced in the plaintiff's complaint and is central to the plaintiff's claims, it may be considered in deciding a motion to dismiss. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009). Matters within the public record also may be considered. *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Based on these exceptions, the Court can consider the SEC filing, the bankruptcy court records, and the certificate of incorporation in deciding the motion to dismiss. *See, e.g., In re Abbott Labs. Deriv. S'holders Litig.*, 325 F.3d 795, 810 (7th Cir. 2003) (considering articles of incorporation in reviewing dismissal of claims); *Brownstein v. Austin*, No. 07-3984, 2008 WL 4735230, at *4 n.3 (N.D. Ill. May 30, 2008) (considering articles of incorporation in deciding

motion to dismiss); *LeClercq v. Lockformer Co.*, No. 00-7164, 2002 WL 31269491, at *2 (N.D. Ill. Oct. 9, 2002) (considering court records in deciding motion to dismiss); *Abrams v. Van Kampen Funds, Inc.*, No. 01-7538, 2002 WL 1160171, at *2 (N.D. Ill. May 30, 2002) (SEC filings and prospectus could be considered in ruling on motion to dismiss); *In re Newell Rubbermaid, Inc.*, No. 99-6853, 2000 WL 1705279, at *3 n.2 (N.D. Ill. Nov. 14, 2000) (considering prospectus filed with SEC in ruling on motion to dismiss). The Court takes judicial notice of all of these documents, and will consider them in ruling on the motion to dismiss.

## I. Obligation to Manage Mosaic Data For Benefit of Parent

Defendants first argue that all of Plaintiff's claims fail as a matter of law because Defendants were obligated to manage Mosaic Data for the benefit of its parent, the Mosaic Group Entities. (R. 85, Defs.' Mot. to Dismiss at 4.) Defendants argue that since Plaintiff has admitted that the Asset Pledge was made for the benefit of the Mosaic Group Entities, Plaintiff's claims fail. (R. 85, Defs.' Mot. to Dismiss at 4.). In support Defendants cite to *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 173 (Del. Ch. 2006), *aff'd* 931 A.2d 438 (Del. 2007), which recognized that under Delaware law, "[w]holly-owned subsidiary corporations are expected to operate for the benefit of their parent corporations; that is why they are created."

The Court disagrees that Plaintiff's claims should be dismissed under *Trenwick*. As Plaintiff points out, the rule in *Trenwick* does not apply when the subsidiary is insolvent or where

6

the transaction at issue would render the subsidiary unable to meet its legal obligations.[2] (*See* R. 94, Pl.'s Resp. at 4.) Notably, in *Trenwick*, the court dismissed the plaintiff's breach of duty claims against a subsidiary's former directors based on transactions that solely benefitted the parent company, because there were no allegations that the subsidiary was "insolvent before any of the challenged transactions or that any of the challenged transactions would, when consummated, leave [the subsidiary] unable to satisfy its creditors." *See Trenwick*, 906 A.2d at 202; *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 367 (3d Cir. 2007) (observing that under Delaware law fiduciary duties of subsidiary no longer run to parent when subsidiary is insolvent); *In re Greater Southeast Comm. Hosp. Corp.*, 353 B.R. 324, 342 n.24 (Bankr. D.D.C. 2006) (citing *Trenwick* for the proposition that fiduciary duties of director of wholly-owned subsidiary run to the parent corporation, except when the corporation becomes insolvent).

Construing the allegations in the light most favorable to Plaintiff, Plaintiff has adequately alleged that the Asset Pledge, when consummated, rendered Mosaic Data unable to satisfy its legal obligations. Specifically, Plaintiff alleges that because of the Asset Pledge, "Mosaic Data was unable to obtain financing necessary to continue to operate its day-to-day business" and that the Asset Pledge "quickly diminished Mosaic Data's value and its ability to pay creditors and survive." (R. 83, First Am. Compl. ¶¶ 17-18.) Plaintiff further alleges that "[d]ue to the Asset Pledge, Mosaic Data's remaining assets were unreasonably small in relation to its business and

---

[2] A corporation is insolvent under Delaware law when its liabilities exceed the reasonable market value of its assets, or when it is unable to pay its debts as they come due in the usual course of business. *Prod. Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 775-776 (Del. Ch. 2004); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 791 (Del. Ch. 1992).

the expenses and costs associated therewith." (*Id.* ¶ 40.) The Court finds these allegations sufficient to permit the case to proceed. However, if it is determined at later stages of the litigation that the Asset Pledge did not render Mosaic Data insolvent, but simply less valuable, there would be no liability by Mosaic Data's directors on the breach of duty claims. *See Trenwick*, 906 A.2d at 192; *see also In re Teleglobe*, 493 F.3d at 367 n.24 ("[T]here is nothing wrong (or even unusual) about a parent causing its solvent wholly owned subsidiary to act in a way that benefits the corporate family but harms the individual subsidiary.").

## II. Res Judicata

Defendants next argue that Plaintiff's claims fail because the bankruptcy court approved the Asset Pledge in the Mosaic Group Entities' Chapter 11 bankruptcy. (R. 85, Defs.' Mem. at 7.) In Defendants' view, the failure of Mosaic Data's creditors to object to the approval of the Asset Pledge in that proceeding precludes Plaintiff from challenging the transaction in this proceeding. (*Id.*) Res judicata, or claim preclusion, bars the relitigation of claims if "the cause of action has been fully and finally determined on the merits between the same parties by a court of competent jurisdiction." *Aaron v. Mahl*, 550 F.3d 659, 664 (7th Cir. 2008). Res judicata bars not only those issues actually decided in the prior suit, but all other issues which could have been raised. *Id.*

The Court agrees with Plaintiff that Defendants' res judicata argument is unavailing. As an initial matter, it is not entirely clear from the bankruptcy court's order that it did in fact approve the Asset Pledge by Mosaic Data. The order is lengthy---more than 100 pages with attachments---and difficult to parse, but Defendants have not pointed the Court to any specific portion of the order referencing the Asset Pledge by Mosaic Data. Further, in an attachment to

8

the order listing the guarantors, numerous Mosaic entities are listed, but Mosaic Data is not one of them. (R. 85-3, Bankruptcy Order, Schedule 1 at 1.) Plaintiff disputes that the bankruptcy court approved the Asset Pledge by Mosaic Data, and based on the present record it would be difficult for this Court to definitively conclude that it did. (R. 94, Pl.'s Resp. at 7.)

There are additional problems with Defendants' res judicata argument. Assuming that the Asset Pledge was approved as part of Mosaic Group Entities' Chapter 11 bankruptcy case, Plaintiff has alleged (and the Court must accept as true) that Mosaic Data had different creditors than its parent. (R. 84, First Amend. Compl. ¶ 12.) Thus, there is no basis in the record to conclude that Mosaic Data's creditors were given notice and an opportunity to object to the Asset Pledge. Plaintiff also would not have been given notice and an opportunity to object, since Mosaic Data was not even in bankruptcy at the time of the Asset Pledge (and thus Plaintiff had not yet been appointed to serve as trustee). (*See id.* ¶¶ 4, 15.) Although principles of preclusion apply not only to parties to the first case but also to those in privity with them, there is nothing to indicate that the interests of the creditors of Mosaic Data and the Mosaic Group Entities were aligned, and indeed, their interests were likely in conflict given that Plaintiff has alleged Mosaic Data essentially bankrupted itself in order to ensure that the Mosaic Group Entities could continue to operate. (*See* R. 83, First Am. Compl. ¶¶ 15-18; *see also* R. 85-3, Bankruptcy Order ¶ 13 ("Without the [debtor-in-possession] Financing, the Debtors will not have the funds necessary to pay post-petition payroll, payroll taxes, inventory suppliers, overhead, or to maintain their assets . . . .").)

There is also no indication in the documents before the Court that the bankruptcy court determined whether the Asset Pledge constituted a breach of duty by Mosaic Data's directors.

9

Rather, the issue before the bankruptcy court was whether, and on what terms, the Mosaic Group Entities should be permitted to obtain debtor-in-possession financing. In the order, the bankruptcy court stated that the terms of the financing arrangement "reflect the *Debtors'* exercise of prudent business judgment consistent with their fiduciary duties . . . ." (R. 85-3, Order ¶ 10) (emphasis added). The "Debtor" referred to was the Mosaic Group Entities, not Mosaic Data. The order does not reflect a determination by the bankruptcy court that the Asset Pledge constituted a prudent business judgment by Mosaic Data's directors. This case is thus distinguishable from the numerous cases cited by Defendants, wherein the same claims were clearly raised in two different proceedings, or where a party was given notice and an opportunity to object in an earlier bankruptcy proceeding but failed to do so. (*See* R. 85, Defs.' Mem. at 7-8) (citing cases). The Court therefore rejects Defendants' argument that Plaintiff's claims are subject to dismissal on res judicata grounds.

### III. Standing of Creditors

Defendants next argue that Count I, brought on behalf of Mosaic Data's creditors, fails as a matter of law, because under Delaware law creditors cannot bring a direct cause of action against a corporation's directors for breach of fiduciary duty. (R. 102, Defs.' Reply at 6.) In Count I, Plaintiff alleges that Defendants breached their "trust fund" duties with respect to Mosaic Data's creditors. (R. 83, First Am. Compl., Count I.) The trust fund doctrine has been applied to hold directors of a dissolved or insolvent corporation liable for the debts of the corporation when they breach their fiduciary duty by improperly distributing the assets of the corporation. *See Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 769 n.23 (Del. Ch. 2007), *aff'd* 956 A.2d 32 (Del. 2008). Under the trust fund doctrine, "the directors

[of an insolvent corporation] become trustees tasked with preserving capital for the benefit of creditors who are deemed to have an equity-like interest in the firm's assets." *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 791 (Del. Ch. 2004).

The Delaware Supreme Court has limited the type of actions that can be brought by a corporation's creditors. Specifically, no direct action may be filed by the creditors of a solvent corporation, even if the corporation is operating in the "zone of insolvency." *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 99 (Del. 2007). Nevertheless, creditors of an *insolvent* corporation may bring a derivative action against the corporation's directors for breach of fiduciary duties.[3] *Id.* at 101-02. As the Delaware Supreme Court explained:

> When a corporation is solvent, [fiduciary] duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. Consequently, *the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.* . . . Individual creditors of an insolvent corporation have the same incentive to pursue valid derivative claims on its behalf that shareholders have when the corporation is solvent.

*Gheewalla*, 930 A.2d at 101-02 (emphasis added). Based on this language in *Gheewalla*, courts applying Delaware law have permitted a derivative claim brought by a Chapter 7 trustee on

---

[3] A derivative suit is brought on behalf of the corporation and so the recovery, if any, must go to the corporation. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004); *see also Prod. Res. Group*, 863 A.2d at 792 (noting that in derivative claims brought by creditor of insolvent company, "any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets.").

11

behalf of the creditors of an insolvent corporation to proceed. *See In re VarTec Telecom, Inc.*, No. 06-3506, 2007 WL 2872283, at *3-4 (Bankr. N.D. Tex. Sept. 24, 2007); *see also In Re MS55, Inc.*, No. 06-1233, 2008 WL 2358699, at *3 (D. Colo. Jun. 6, 2008) (holding that under *Gheewalla*, bankruptcy trustee could "stand in the creditor's shoes" and bring derivative action for aiding and abetting breach of fiduciary duties against insolvent corporation's officers and directors). Based on this case law, the Court finds that Plaintiff has properly stated a derivative claim for breach of fiduciary duty on behalf of Mosaic Data's creditors, and declines to dismiss on this ground.

## IV.  Exculpatory Clause

Defendants next argue that Plaintiff's breach of duty and waste claims (Counts I-III) must be dismissed based on an exculpatory clause contained in Mosaic Data's certificate of incorporation, which "eliminates liability for alleged duty of care breaches by Mosaic Data's directors." (R. 85, Defs.' Mem. at 8-11; *id.*, Ex. F.) Delaware law permits a corporation to include in its certificate of incorporation a provision eliminating or limiting the personal liability of a director for breach of fiduciary duty. Del. Code Ann. tit. viii, § 102(b)(7). However, liability may not be limited or eliminated in cases involving, among other things, breach of the duty of loyalty to the corporation or its stockholders; acts or omissions that are not taken in good faith; or a transaction from which the director derived an improper personal benefit. *Id.*

When the validity of an exculpatory clause is not contested and where the plaintiff alleges only a breach of the duty of care, with no claims of "bad faith, intentional misconduct, knowing violation of law, or any other conduct for which the directors may be liable," the exculpatory provision may be considered and applied in deciding a motion to dismiss. *Abbott Labs.*, 325

12

F.3d at 810. However, dismissal is not appropriate when a complaint alleges facts that infer a breach of loyalty or good faith. *Id.* To survive a motion to dismiss, the complaint must plead these claims of non-exempt conduct with sufficient particularity to permit the Court to reasonably conclude that the directors' conduct falls outside the exemption. *Id.* at 811. Where the complaint sufficiently alleges a breach of fiduciary duties based on a failure of the directors to act in good faith, bad faith actions present a question of fact that cannot be determined at the pleading stage. *Id.*

Here, Plaintiff alleges that Defendants pledged all of Mosaic Data's assets for no consideration, causing the corporation to become insolvent; that Mosaic Data was not operated for independent purposes; that Defendants personally benefitted from the Asset Pledge; and that they held conflicting fiduciary duties to entities on both sides of the Asset Pledge transaction.[4] (R. 83, First Am. Compl. ¶¶ 12, 15, 16.) These allegations adequately allege a breach of the duty

---

[4] Throughout the First Amended Complaint, Plaintiff alleges that Defendants were directors "and/or" officers of Mosaic Data. (*See* R. 83, First Am. Compl. ¶¶ 5-9.) Plaintiff explains that at this stage of the litigation it is unable to "parcel out actions taken by the Defendants in their capacity as directors." (R. 94, Pl.'s Resp. at 10 n.9.) In another case where the plaintiff did not delineate between the actions taken by one of the defendants in his capacity as an officer "separate from those he supposedly took as a director," the defendant was treated as a director for purposes of the motion to dismiss. *IT Litig. Tr. v. D'Aniello*, No. 02-10118, 2005 WL 3050611, at *9 (D. Del. Nov. 15, 2005). The Court finds that the appropriate course here. The Court notes that to establish liability Plaintiff will ultimately be required to separate out Defendants' actions taken as officers and directors. *See In re Century Elecs. Mfg., Inc.*, 345 B.R. at 36 (applying Delaware law and declining to bar claims under exculpatory clause where plaintiff could not yet delineate between actions defendants took in their capacity as officers as opposed to directors, noting that plaintiff would have to do so at later stages of the litigation). Defendants may be immunized from a breach of fiduciary duty claim in their capacity as corporate directors, but may still be liable in their capacity as officers. *In re Greater Southeast Cmty. Hosp. Corp.*, 333 B.R. 506, 528 (Bankr. D.D.C. 2005) (applying Delaware law).

13

of loyalty and the failure to act in good faith. *See Malpiede v. Townson*, 780 A.2d 1075, 1094 (Del. 2001) (if plaintiff raises allegations supporting a breach of loyalty or bad faith claim, exculpatory provision is unavailing and case should go forward); *see also In re Century Elecs. Mfg., Inc.*, 345 B.R. 33, 36 (Bankr. D. Mass. 2006) (under Delaware law, exculpatory clause contained in certificate of incorporation did not shield directors who were also officers from liability where plaintiff raised allegations to support claim for breach of duty of loyalty).

Defendants point to certain facts they believe are missing from the complaint, such as the precise amount of compensation Defendants stood to retain based on the Asset Pledge or the exact manner in which they lacked independence from the Mosaic Group Entities. (R. 85, Defs.' Mem. at 5-6; R. 102, Defs.' Reply at 8.) Defendants argue that this lack of factual detail renders Plaintiff's claims deficient as a matter of law, citing numerous Delaware state cases decided under state pleading standards. (R. 85, Defs.' Mem. at 5-6; R. 102, Defs.' Reply at 8.) This case, however, is governed by federal pleading standards. *See Windy City Metal Fabs. & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008) (holding that state law claims must be evaluated under federal pleading standards); *Johnson v. Hondo, Inc.*, 125 F.3d 408, 417 (7th Cir. 1997) ("[I]t is rudimentary that pleading requirements in the federal courts are governed by the federal rules . . . ."). The First Amended Complaint may not be a model of legal draftsmanship, but Plaintiff has adequately alleged its claims, including the circumstances under which Defendants allegedly engaged in self-dealing, and the Court finds no basis to dismiss on this ground.

## V.     Business Judgment Rule

Defendants next argue that Plaintiff's duty of care claims fail because Plaintiff has not

alleged enough to overcome Delaware's "business judgment rule." (R. 85, Defs.' Mem. at 9-10.) The business judgment rule is a presumption that in making a business decision, "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Abbott Labs.*, 325 F.3d at 807. The actions of a director are protected by the business judgment rule unless a plaintiff proves that the director breached his fiduciary duty of loyalty, good faith, or due care. *McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000). In other words, "if directors act loyally and carefully, they are not liable even if the transaction goes awry." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 918 (7th Cir. 2002).

A plaintiff can overcome the business judgment rule for a particular transaction by showing "that a majority of a board that approved the transaction in dispute was interested and/or lacked independence." *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002). A director is interested when appearing on both sides of a transaction or when deriving a personal benefit from a transaction that is not received by stockholders generally. *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984); *Orman*, 794 A.2d at 23. "Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Aronson*, 473 A.2d at 816. If the business judgment rule is rebutted, the burden shifts to the directors to prove to the trier of fact the "entire fairness" of the transaction. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). To do so the directors must establish that the transaction was the product of both fair dealing and a fair price. *Id.*

In determining whether to dismiss based on the business judgment rule, the Court must consider whether the totality of the allegations establish a "reasonable doubt" about whether the

15

defendant's actions are protected by the business judgment rule; at this stage, the plaintiff's allegations need not rise to the level of supporting a judicial determination that the directors' actions fall outside the business judgment rule.[5] *Abbott Labs.*, 325 F.3d at 809. Plaintiff has satisfied that standard here. Specifically, Plaintiff alleges that while acting as officers or directors of Mosaic Data, Defendants were also serving as directors or officers of other Mosaic Group Entities, to whom they owed conflicting fiduciary duties; that Defendants did not operate Mosaic Data for independent purposes but solely to benefit the Mosaic Group Entities; that the Asset Pledge was made without any benefit to Mosaic Data; and that the Asset Pledge was instead made to benefit the Mosaic Group Entities and to personally benefit Defendants. (R. 83, First Am. Compl. ¶¶ 12-17.) These allegations are sufficient to raise a reasonable doubt about whether Defendants are protected by the business judgment rule. *See, e.g., Ad Hoc Comm. of Equity Holders v. Wolford*, 554 F. Supp. 2d 538, 558 (D. Del. 2008) (denying motion to dismiss based on Delaware business judgment rule, where plaintiff alleged that defendants appeared on both sides of transaction and were not disinterested); *Hollinger Int'l v. Hollinger, Inc.*, No. 04-698, 2005 WL 589000, at *27-28 (N.D. Ill. Mar. 11, 2005) (denying Rule 12(b)(6) motion based on Delaware business judgment rule where plaintiff alleged that during the time defendant sat on board and approved disputed transactions, he was also serving as CEO of subsidiary and received substantial compensation in this position, indicating he was not independent).

---

[5] Although in *Abbott Labs.* the Seventh Circuit was deciding the question of whether the plaintiff had sufficiently alleged demand futility to permit its derivative claims to proceed, the Court explained that "the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine's applicability." *Abbott Labs.*, 325 F.3d at 807 (citing *Aronson*, 473 A.2d at 812).

16

Defendants also appear to argue that receipt of compensation by officers and directors is insufficient as a matter of law to show self-dealing. (*See* R. 85, Defs.' Mem. at 5-6; R. 102, Defs.' Reply at 8.) However, the numerous cases Defendants cite did not reach such a definitive holding, and instead concluded only that the particular circumstances did not rise to the level of establishing self-dealing. (*See* R. 85, Defs.' Mem. at 5-6) (citing cases). Delaware courts have recognized that directors who provide services outside of their role as directors for material benefits to the company, or another company dominated by the controlling shareholder, may lack independence sufficient to preclude them from asserting the protections of the business judgment rule. See *Telxon Corp. v. Meyerson*, 802 A.2d 257, 265 (Del. 2002) (director not independent where his law firm received a substantial portion of its revenue from the controlling shareholder and businesses he controlled); *Orman*, 794 A.2d at 30 (director, who provided consulting services to the company, lacked independence from controlling shareholder because continuation of his consulting contract rested upon the discretion of the controlling shareholder); *In re Emerging Commc'n S'holders Litig.*, No. 16415, 2004 WL 1305745, at *33 (Del. Ch. June 4, 2004) (director, whose outside legal practice derived much of its business through the controlling shareholder, was not independent). In short, the Court concludes that Plaintiff has adequately alleged self-dealing and lack of independence by Mosaic Data's directors, and declines to dismiss on this ground.

## VI.     Transfer Claims

Defendants next argue that Counts IV and V must be dismissed because they are not proper parties to the fraudulent transfer claims. (R. 85, Defs.' Mem. at 11-12; R. 102, Defs.' Reply at 12-13.) Section 548 of the Bankruptcy Code enables a trustee to avoid certain pre-

petition transfers of property on the ground that the transfers were fraudulent. 11 U.S.C. § 548. Under the Bankruptcy Code, the trustee has a right to recover against certain entities, including the initial transferee or, as is relevant here, "the entity for whose benefit such transfer was made."[6] 11 U.S.C. § 550; *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 891 (7th Cir. 1988). It is clear that Defendants were not the initial transferees of the Asset Pledge, since the Pledge was made to the Mosaic Group Entities. (R. 83, First Am. Compl. ¶¶ 15.) However, the parties dispute whether Defendants constitute someone "for whose benefit such transfer was made." The Court concludes that they do not.

The term "entity for whose benefit such transfer was made" has a particular meaning under the Bankruptcy Code; it refers to a guarantor or debtor of the transferee---"someone who receives the benefit but not the money." *Bonded Fin. Servs.*, 838 F.2d at 895; *see also In re McCook Metals, LLC*, 319 B.R. 570, 590 (Bankr. N.D. Ill. 2005) (transfer beneficiary under Bankruptcy Code is "a party whose indemnification obligations or whose own debts are extinguished or reduced by the transfer"). A person or entity that simply "receives the money later on" is not a transfer beneficiary. *Bonded Fin. Servs.*, 838 F.2d at 896. Thus, the mere fact that Defendants may have received salaries "later on" as a result of the Asset Pledge does not qualify them as transfer beneficiaries. *See In re Hansen*, 341 B.R. 638, 644 (Bankr. N.D. Ill. 2006) (shareholder was not transfer beneficiary where transfers did not go to reduce his financial obligations but were instead used to keep corporation operating); *see also Baker O'Neal Holdings, Inc. v. Ernst & Young LLP*, No. 03-132, 2004 WL 771230, at *13 (S.D. Ind. Mar. 24,

---

[6] The IUFTA contains an analogous provision which allows a transfer to be recovered from "the person for whose benefit the transfer was made." 740 ILCS 160/9(b).

18

2004) (entities that subsequently received fees as a result of transfer were not transfer beneficiaries under *Bonded Financial*, since the fact that they received a "remote benefit as a result of the transfer does not mean that the transfer was made for their benefit.").

Because Defendants are not proper parties to the fraudulent transfer claims, Counts IV and V are dismissed. Moreover, there is nothing further Plaintiff can allege, consistent with what has already been alleged regarding the nature of Defendants' involvement in the Asset Pledge, to overcome this deficiency, and Plaintiff has already had two opportunities to state these claims. Accordingly, the claims are dismissed with prejudice.[7]

## VII. Damages

As a final matter, Defendants argue that Plaintiff has failed to adequately articulate the basis for the damages it seeks. (R. 85, Defs.' Mem. at 13 n.12.) The Court disagrees that Plaintiff has failed to provide enough detail regarding the nature of the damages sought; however, the Court does agree that Plaintiff has not provided any legal basis for its stand-alone claim for "exemplary damages" in Count VI. The sole allegation made under this count is as follows: "[Defendants] have caused significant harm to the Debtor and its creditors as a result of their malicious, willful, and fraudulent conduct and/or gross negligence. Hence, Plaintiff is entitled to an award of exemplary damages." (R. 83, First Am. Compl. ¶ 43.) It is not clear from the Complaint whether Plaintiff is bringing this claim under Delaware or Illinois law, or what the legal basis is for the claim, and Plaintiff provides no response to Defendants' challenge to this

---

[7] Since the claims have been dismissed, the Court does not reach Defendants' alternative argument that Plaintiff failed to plead these claims with the requisite particularity required by Rule 9(b). (*See* R. 85, Defs.' Mem. at 13-14.)

claim in its opposition to the motion to dismiss, instead arguing generally that it has properly alleged damages. (*See* R. 94, Pl.'s Resp. at 16 n.24.) Under either Illinois or Delaware law, as in most states, punitive damages represent a type of relief rather than an independent cause of action. *See Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 692 N.E.2d 269, 274 (Ill. 1998); *E.I. Du Pont de Nemours & Co. v. Admiral Ins. Co.*, No. 89-99, 1994 WL 465547, at *7 (Del. Super. Aug. 3, 1994); *see also* Am. Jur. 2d Actions § 76 ("A claim for punitive damages does not constitute an independent cause of action.").

Plaintiff has requested exemplary damages in its prayer for relief, and can seek an award of such damages in connection with its other claims to the extent they are available under the substantive law applicable to those claims. (*See* R. 83, First Am. Compl. at 15.) Accordingly, Count VI is dismissed with prejudice.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (R. 84) is granted in part and denied in part. Counts IV, V and VI of the First Amended Complaint are dismissed with prejudice. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all settlement possibilities for this case. A status hearing will be held on **May 27, 2009, at 9:45 a.m.** to set a firm litigation schedule for this delayed lawsuit.

ENTERED:

**Judge Ruben Castillo
United States District Court**

**Dated: May 12, 2009**